UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


DARRIN LAPINE,

        Petitioner,

v.                                 Case No. 2:03-cv-282
                                 HON. RICHARD ALAN ENSLEN

PAUL RENICO,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

Petitioner Darrin LaPine filed this petition for writ of habeas corpus challenging the validity of his state court conviction for two counts of assault with intent to do great bodily harm less than murder and possession of a firearm in the commission of a felony.  Petitioner was convicted after a jury trial on April 17, 2001, and on July 2, 2001, was sentenced to prison terms of 38 months to 10 years on one assault conviction and 57 months to 10 years on the other assault conviction.  Petitioner was sentenced to a consecutive prison term of two years on the felony firearm conviction.

Petitioner maintains that his conviction was obtained in violation of his federal rights.  The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

Whether the petitioner is entitled to the writ of habeas corpus when the application of *Strickland v. Washington*, *Arizona v. Hicks*, *Williams v. Taylor*, *Mapp v. Ohio*, and *Berger v. United States* was so arbitrary, unsupported and or offensive to the United States Supreme Court precedent that the decision made by the Michigan Court of Appeals falls outside the realm of Plausible Credible Outcomes?

Whether the Michigan Court of Appeals' decision in reference to ineffective assistance of counsel is clearly erroneous, being "contrary to" and or an "unreasonable application" of United States Supreme Court precedent, conflicting with a reasonable application of *Strickland v. Washington*?

Whether the Michigan Court of Appeals clearly erred on the 4th Amendment/plain view/due process issue (illegal seizure of personal property communication) and "unreasonably" or "contrarily" applied clearly established United States Supreme Court precedent?

Whether the Michigan Court of Appeals contrarily or unreasonably applied the principals established in *Berger v. United States*, and affirmed a conviction that was obtained in violation of the Due Process Clause, where the prosecution consistently used methods calculated to produce a wrongful conviction?

Whether the Michigan Court of Appeals' failure to remand to consider ineffective assistance of counsel, and prosecutorial misconduct, allowing the petitioner the opportunity to expand and develop a record of support for these issues, and if this caused a material injustice and is not supported by the United States Supreme Court decision in *Williams v. Taylor*, I?

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

- 2 -

application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.* at 413.  A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must also be "unreasonable."  *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* (disavowing *Drinkard v.*

- 3 -

*Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.*

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 577 U.S. 1040 (1999).

Petitioner claims that he received ineffective assistance of counsel.  In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable.  *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998).  Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the

judgment.  *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).  Rather, a petitioner must show

that the probability that the outcome of the case would have been different but for counsel's

unprofessional errors is sufficient to undermine confidence in the result.  *Wong*, 142 F.3d at 319;

*Austin*, 126 F.2d at 848.  "The performance and prejudice components of the *Strickland* test are mixed

questions of law and fact."  *Austin*, 126 F.2d at 848.

       The court's review of defense counsel's performance is highly deferential, and defense

counsel is presumed to have rendered adequate assistance by exercising reasonable professional

judgment and sound trial strategy.  *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848.  The petitioner

must overcome the presumption that, under the circumstances, the challenged actions might be

considered sound trial strategy.  *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754

(6th Cir. 1999).

       The Michigan Court of Appeals rejected petitioner's ineffective assistance of counsel

claims explaining;

> Defendant first alleges that trial counsel was ineffective for failing to
> suppress or request a limiting instruction regarding the testimony of
> domestic assaults by defendant's ex-girlfriend, Jennifer LeFevre.  We
> disagree.  To establish a claim of ineffective assistance of counsel, the
> defendant must demonstrate that his attorney's representation fell
> below an objective standard of reasonableness and was so prejudicial
> that the defendant was denied a fair trial.  *People v. Toma*, 462 Mich
> 281, 302; 613 NW2d 694 (2000).  The defendant must overcome the
> presumption that the challenged action was trial strategy and also
> establish a reasonable probability that, but for counsel's unprofessional
> *v. Hoag,* 460 Mich 1, 5; 594 NW2d 57 (1999)] Defendant has failed to overcome the
> burden that the challenged action was trial strategy.  At the beginning of cross-
> examination, defense counsel stated that he would need a score card to keep track of
> the number of lies told by LeFevre.  Indeed, LeFevre admitted to telling lies to both
> police and defendant.  While LeFevre testified that defendant struck her, she also
> testified that she had financial and other support to leave the abusive situation.  She
> reported being knocked unconscious by defendant for two and a half days, but never
> reported the incident or sought medical treatment.  Defense counsel also explored the
> dismissal of a drunk driving charge against LeFevre as a motivation for her to

fabricate testimony about defendant. Under the circumstances, we cannot conclude that trial counsel rendered ineffective assistance, but rather, acted to discredit all aspects of LeFevre's testimony.

The Michigan Court of Appeals further summarily rejected petitioner's other claims of ineffective assistance of counsel.

In the opinion of the undersigned, counsel acted effectively in challenging witness LeFevre on cross examination. Petitioner's assertion that counsel should have objected to the testimony or requested a limiting instruction is without merit. Counsel's choice to discredit LeFevre was an appropriate trial strategy under the circumstances.

Similarly, petitioner argues that counsel failed to challenge two jurors for cause because petitioner knew the jurors and those jurors harbored some unexplained bias against petitioner. Petitioner's claim is speculative at best. Counsel submitted an affidavit to the Grievance Commission stating that petitioner never informed counsel that he knew any of the jurors until after the trial. Petitioner claims that he informed counsel at an early stage that he knew two jurors. During jury selection the jurors were asked if they knew the petitioner and voir dire was conducted on those potential jurors who indicated that they knew petitioner. Most importantly, petitioner has failed to show that the jury was not impartial, or that any particular juror harbored any potential bias against him.

Petitioner argues that counsel failed to perform a pretrial investigation to show that the alleged "bird shot" could not have come from the cartridges that were found at the crime scene, that Jennifer LeFever's conflicting testimony could have been more favorably revealed by witnesses Stephanie Roose and David Hoornstra, and that x-rays showed that victim Jerry LaPine, Jr., never had lead in the area of his body where it was supposedly found. In the opinion of the undersigned, counsel did not err on these matters. The fact that the particular cartridge manufacturer may not have

used "bird shot" in cartridges could have easily been explained. Among the many reasons, it appeared that more than one weapon was used and all the cartridges may not have been found. The larger issue was that multiple witnesses testified that petitioner shot the victims.

Petitioner argues that two witnesses that were not called to testify would have proven that petitioner was innocent. Petitioner has made no effort to explain how those two potential witnesses would have testified. Counsel further explained in his letter to the Grievance Commission that petitioner provided a number of witnesses that were supposedly favorable to him and willing to testify. However, when interviewed by counsel those witnesses were not interested in testifying on petitioner's behalf or would have testified in an unfavorable manner. As a result, counsel determined that it would be in petitioner's best interest not to call these witnesses. Petitioner has failed to show that these witnesses would have proved favorable to him if called to testify. Letter of Wm. Dyke Justin, attached to docket number 52.

Petitioner complains that medical evidence would have shown that victim Jerry LaPine, Jr., had no lead in the area of examination. Petitioner has not presented any evidence to support this contention. However, witnesses testified that LaPine was shot and there existed factual evidence for the jury to conclude that an assault occurred.

Further, petitioner asserts that the court instructed the jury on a matter, outside the presence of counsel, after the jury gave the court a letter during deliberations. Nothing in the record supports petitioner's claims. Defense counsel explained in a letter to appellate counsel that, after the fact, the court informed counsel that the jury wanted to view an exhibit or wanted to have testimony read back to them. Letter by Wm. Dyke Justin dated March 29, 2002, attached to docket #52. The court either sent the exhibit into the jury room or told the jury that they needed to use their collective memory as to what the witness testified. Neither the prosecutor nor defense counsel were present in

the courtroom when this apparently occurred.  Further, there exists no record of what actually may have transpired.  Most importantly, petitioner has shown no prejudice but simply speculates that he may have been found guilty of the lessor included charges if counsel was present in the courtroom when the judge received the note from the jury.

Petitioner received effective assistance of counsel in this matter.  Petitioner has completely failed to show that his counsel was ineffective on any of the issues petitioner presented in this matter.  The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that through an unlawful search investigators discovered an incriminating letter that petitioner wrote to his ex-girlfriend.  The Michigan Court of Appeals rejected this claim finding that the letter the police discovered was authorized within the scope of the search warrant.  Petitioner has failed to show that the Michigan Court of Appeals decision was unreasonable.  Moreover, this claim is not actionable in this proceeding.

In the opinion of the undersigned, Petitioner's claim is subject to dismissal under the rule announced in *Stone v. Powell*, 428 U.S. 465 (1976).  In *Stone*, the Supreme Court concluded that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.

In *Riley v. Gray*, 674 F.2d 522 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982), the Sixth

Circuit interpreted *Stone* as requiring the district court to make two distinct inquiries in habeas

proceedings:

> Initially, the district court must determine whether the state procedural
> mechanism, in the abstract, presents the opportunity to raise a fourth
> amendment claim. *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir.
> 1980). Second, the court must determine whether presentation of the
> claim was in fact frustrated because of a failure of that mechanism.
> *See Boyd v. Mintz*, 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v.
> Henderson*, 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied*,
> 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

*Id.* at 526 (footnote omitted). The record reveals no reason why petitioner would have been prevented

from raising his Fourth Amendment claims in the state courts. Indeed, petitioner did have the

opportunity to raise these issues in the state courts where they were rejected. Accordingly, in the

opinion of the undersigned, petitioner is precluded from raising this claim under the rule announced

in *Stone v. Powell*.

Petitioner asserts a claim of prosecutorial misconduct. Ultimately, the issue for the

Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v.

Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380

(6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v.

Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas

action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional

concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States

v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*,

949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d

281 (6th Cir. 1989).

The prosecutor's closing statement was simply a comment on the evidence presented during trial.  The prosecutor did not violate petitioner's rights by commenting on the evidence.  Petitioner has failed to show prosecutorial misconduct.

Petitioner argues that the Michigan Court of Appeals failed to remand the matter to the trial court for an evidentiary hearing.  That is solely a matter of state law.  Further, an evidentiary hearing is not warranted in this case.  A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief and the state has not afforded the petitioner a full and fair evidentiary hearing.  *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003).  There exists no factual dispute in this matter which if resolved in petitioner's favor would result in the granting of this writ.  Petitioner cannot show that the Michigan Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court

must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. Petitioner has failed to show ineffective assistance of counsel. Petitioner cannot assert a Fourth Amendment claim in this habeas action, and petitioner has failed to show prosecutorial misconduct. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  November 28, 2005