UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DARRIN LAPINE,

        Petitioner,

Case No. 2:03-CV-282

v.

Hon. Richard Alan Enslen

PAUL RENICO,

**OPINION**

        Respondent.
_____/

      This matter is before the Court on Petitioner Darrin LaPine's Objections to United States Magistrate Judge Timothy P. Greeley's Report and Recommendation of November 28, 2005. Said Report recommended that this Petition under 28 U.S.C. § 2254 be denied with prejudice on its merits. This Court reviews the Report, the Objections and the pertinent portions of the record *de novo*. *See* 28 U.S.C. § 636(b)(1)(B).

**BACKGROUND**

      Petitioner was convicted by jury in 2001 of two assaults with intent to do great bodily harm less than murder and possession of a firearm in commission of a felony. The record shows that what he did was to snipe at two fisherman who had come to collect unpaid wages from him at his home. He fired with a shotgun through a window screen and hit them with bird shot. The incident was reported to police who questioned his girlfriend. She initially denied his involvement, but eventually admitted that he had fired upon the men and that he had hid the weapon, until it was later discovered. During opening statement, defense counsel essentially undermined the witness by discussing changes in her statements and her motivations for doing so. When she testified, the assistant prosecutor

effectively rehabilitated her testimony by citing a history of domestic abuse by Petitioner to explain why she was not initially truthful to police in explaining the shooting incident (*i.e.*, fear of injury).

Petitioner was convicted by jury and received sentences of 38 months to ten years for one assault, 57 months to ten years for the second assault, and a consecutive sentence of two years on the felony firearm conviction.

Petitioner filed his Petition in 2003 claiming ineffective assistance of trial counsel. The Respondent answered the Petition after the filing of the pertinent Rule 5 materials, which have been reviewed by this Court. Petitioner has asserted five issues in his Petition, though some of those issues overlap. Petitioner claims that trial counsel was ineffective in violation of his Sixth Amendment rights. Petitioner also claims that his prosecution was in violation of his Fourth Amendment rights and his rights under the Due Process Clause of the Constitution.

**LEGAL STANDARDS**

Habeas relief, since 1996, has been limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.,* which provisions are applicable to this case.

AEDPA provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As reflected in the statutory language, there are three avenues for habeas relief: (1) for decisions "contrary" to federal law; (2) for an "unreasonable application" of federal law; and (3) for an "unreasonable determination of the facts." Under the case law of the United States Supreme Court and the Sixth Circuit Court of Appeals, a state court decision is "contrary to" federal law only when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000); *see also Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005) (following *Williams*). A state court decision is an "unreasonable application" of federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Factual findings made by the state court, or by state appellate courts based upon the trial record, are presumed to be correct but may be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Bugh v. Mitchell,* 329 F.3d 496, 500 (6th Cir. 2003); *Biros*, 422 F.3d at 386.

## LEGAL ANALYSIS

Petitioner's Objections, like his Petition, focus in part on his claim that trial counsel was ineffective. To prove ineffective assistance of counsel, Petitioner must show: (1) his counsel performed deficiently, and (2) his counsel's deficient performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Deficient performance is not lightly assumed since the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under

the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689. Likewise, to show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also Johnson v. Luoma*, 425 F.3d 318, 327 (6th Cir. 2005).

In the instant case, neither deficient performance has been shown, nor has prejudice been established. Petitioner did claim that defense counsel was ineffective for failing to object to the "rehabilitation testimony" of his girlfriend, which then implicated him in domestic violence. Petitioner asserts that the testimony was improper under Michigan Court Rule 404(b). This objection fails to appreciate that the Michigan courts, including the Michigan Supreme Court, have long said that genuine rehabilitation testimony under Michigan Court Rule 608 is proper even if it implicates a defendant in prior bad acts. *See, e.g., People v. Engelman,* 453 N.W.2d 656, 665 n.26 (Mich. 1990); *People v. Gordon*, 2002 WL 49050, *2 (Mich. Ct. App. 2002); *People v. Horton*, 2001 WL 671471, *4 (Mich. Ct. App. 2001). In this instance, the rehabilitation testimony was proper because it explained the witness' change in testimony (*i.e.,* she feared domestic abuse at the time of the earlier statements). An objection would have been futile and would have only called attention to unfavorable testimony. While it would have been proper to request a limiting instruction, it was also proper strategy for defense counsel to not request one–because it may have had the effect of emphasized the unfavorable testimony.

Petitioner has also objected to the Magistrate Judge's conclusion that it is speculative on the present record to conclude that trial counsel prejudiced him by failing to challenge two jurors for

4

cause--because they knew him and were prejudiced against him.[1] The trial record is that the jurors did not know him personally. Even assuming Petitioner told trial counsel that he knew the jurors at the time of trial (which was denied by trial counsel), he cannot show ineffective assistance of counsel on the present record. Petitioner is by his argument insisting that trial counsel should have both contradicted the jurors' testimony that they did not know Petitioner (based only upon Petitioner's statement) and then urged the trial court to find the jurors' testimony untruthful and disqualify them for bias. The present record does not support that such a strategy would have been successful. Indeed, it appears more likely that such a strategy would have prejudiced the entire jury panel against Petitioner. *See People v. Robinson,* 397 N.W.2d 229, 231 (Mich. Ct. App. 1986) (discussing effect of such a challenge). Neither "ineffective assistance" nor "prejudice" has been shown as to this ground.

Petitioner has also requested an evidentiary hearing to establish testimony on the jury challenge issue. The district courts retains wide discretion as to whether to conduct such a hearing. *See Abdur'Rahman v. Bell*, 226 F.3d 696, 706 (6th Cir. 2000). Nevertheless, an evidentiary hearing is mandatory only if factual allegations are made which, if proven, would entitle the petitioner to relief. *Vroman v. Brigano,* 346 F.3d 598, 606 (6th Cir. 2003). In this case, Petitioner has not made sufficient factual allegations warranting hearing on this or any other ground.[2]

---

[1] Among other things, Petitioner claims that certain jurors were prejudiced against him because, among other reasons, he had prior to trial refused sexual overtures by two of the jurors. (Mot. for Hearing, Dkt. No. 80, Ex. B.) All the jurors denied knowing Petitioner during jury selection (though one juror said that Petitioner was an acquaintance of her husband). (Trial Tr., Vol. I, 26.)

[2] Title 28 U.S.C. § 2254(e)(2)(B) also states that a hearing shall not be conducted unless Petitioner established that no reasonable fact-finder would find him guilty of the offense. This requirement is also not met. *See Martin v. Mitchell*, 280 F.3d 594, 615 (6th Cir. 2002).

Petitioner has also urged relief on the ground that defense counsel failed to call and investigate potential witnesses about "bird shot"[3] and other matters. Those witnesses' testimony, even assuming that they would have testified as Petitioner believes,[4] would in no sense have changed the outcome of trial given that such testimony would have been viewed by the jury as either consistent with factual guilt and/or simply incredible testimony. The jury heard essentially uncontradicted evidence from the shooting victims that they had been shot (Trial Tr., Vol I, 157, Vol. II, 103-04, 116), saw photographs of their wounds (*id.*), heard from a medical doctor that one of the victims was treated the night of the incident for a gun shot wound (Trial Tr., Vol. IV, 210), heard from Petitioner's girlfriend that she saw Petitioner shoot the victims and bury the long gun used to shoot them (Trial Tr., Vol. III, 19-23, 74-75), and heard that she received a letter from Petitioner written from jail expressing disappointment that she had not disposed of some of the evidence of the

---

[3]The insufficiency of the "bird shot" argument was sufficiently explained on pages six and seven of the Report. Similarly, Petitioner's argument that a radiology report was "negative" and that defense counsel should have introduced the report is also a non-starter. The issue (whether pellets were retained in Jerry LaPine's body after he suffered the gun shot wound which was verified by medical examination and photographs) is relatively unimportant and was properly viewed by defense counsel (at best) as a waste of time and resources.

[4]Defense counsel did not call such witnesses because either he did not believe the testimony would assist the defense, the witness did not wish to testify, and/or he could not do so under the Michigan Rules of Professional Responsibility. (*See* Resp., Ex. A, ¶ 5.) The supposed testimony of David Hoornstra (Pet., App. E) that he saw Jerry LaPine pawn the suspected .22 caliber used in the shooting on the day of the shooting is the kind of incredible testimony that an attorney may not introduce consistent with Michigan Court Rule 3.3(a)(4). Further, Petitioner's overall theory (that Jerry LaPine shot himself and later planted the weapon before police conducted a search of Petitioner's residence) is hardly proven by such otherwise incredible testimony and was contradicted by the trial proofs. (*See, e.g.,* Trial Tr., Vol. II, 28.) The supposed testimony of Stephanie Roose (to the effect that Jerry LaPine had told her that he wanted to get Petitioner in trouble) is also questionable (if even available testimony) given that the note disclosing such testimony included a further notation that Stephanie Roose did not want to be called regarding her statement. (Pet'rs Ex., Dkt. 8-2.) Further proceedings about such testimony would have been a manifest waste of time.

shooting as instructed by Petitioner. (Trial Tr., Vol. III, 38-40 & Pl.'s Trial Ex. 91.) Given such testimony and evidence, the alleged failure of defense counsel to obtain the defense testimony was truly harmless.

Petitioner has also challenged the Magistrate Judge's ruling that his Fourth Amendment unlawful search argument is precluded by Supreme Court case law. The Magistrate Judge was correct. *Stone v. Powell*, 428 U.S. 465, 482 (1976) precludes relief on habeas corpus because the Petitioner had a full and fair opportunity to raise this matter before the state courts.

Petitioner has further objected to the Magistrate Judge's conclusion that the record evidence of prosecutorial misconduct did not show a violation of due process. *See Berger v. United States,* 295 U.S. 78, 88 (1935); *Smith v. Phillips*, 455 U.S. 209, 219 (1982). These issues were sufficiently addressed at pages nine and ten of the Report.[5] The record shows only that the prosecutor made fair argument and comment during the trial.

For the reasons given below, Petitioner has failed to make a showing of a constitutional violation. He has also failed to show any entitlement to relief under the strictures of the AEDPA, as explained above. Therefore, the Petition will be denied with prejudice.

---

[5]The Magistrate Judge also properly rejected Petitioner's argument that his constitutional rights were violated when the trial court answered a jury note to review an exhibit or witness transcript in accordance with its usual practice outside the presence of Petitioner and counsel. (*See* Report at 7.) This argument is wholly frivolous especially considering the binding authority of the Sixth Circuit's decision in *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993), which addressed a like question.

**CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253, the Court must also assess whether to grant the issuance of a certificate of appealability to Petitioner. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (holding that § 2253 analysis may be done at the time the claim for relief is determined). Under the statute and the United States Supreme Court's determinations in *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000) and *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983), a certificate is to be issued if the resolution of the petition is debatable among reasonable jurists or adequate to deserve encouragement for some other reason.

This Court has reviewed the grounds asserted individually as required by the decisions in *Slack* and *Murphy v. Ohio*, 263 F.3d 466, 466-67 (6th Cir. 2001). Upon such review, the Court determines that this standard is not met as to any of the claims for relief asserted because there is no sufficient factual basis for the claims asserted and case law of the Supreme Court, the Sixth Circuit and other Circuits forbids relief. Therefore, a certificate will be denied.

**CONCLUSION**

A Final Order shall enter denying relief, adopting the Report and Recommendation, dismissing the Petition with prejudice, and denying a certificate of appealability.

|  |  |
|---|---|
| DATED in Kalamazoo, MI: | /s/ Richard Alan Enslen |
| January 12, 2006 | RICHARD ALAN ENSLEN |
|  | SENIOR UNITED STATES DISTRICT JUDGE |